UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZIYANG DING,<br><br>                    Plaintiff,<br><br>        v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES (USCIS), et al.,<br><br>                    Defendants. | Case No.  26-cv-00965-SVK<br><br>**ORDER GRANTING IN PART AND DEFERRING IN PART TEMPORARY RESTRAINING ORDER PENDING A STIPULATED BRIEFING SCHEDULE**<br><br>Re: Dkt. Nos. 8, 11 |

On January 30, 2026, Plaintiff Ziyang Ding filed a Petition for Writ of Mandamus, seeking declaratory, injunctive and mandamus relief under the Administrative Procedure Act ("APA") and Mandamus Act.  *See* Dkt. 1.  On February 9, 2026, Plaintiff moved for a temporary restraining order (the "TRO Motion") to prevent the Government from deporting, or taking steps to deport, Plaintiff and to require the Government to adjudicate his pending application for employment authorization.  Dkst. 8, 11.  The Court determines that circumstances warrant ruling, in part, on Plaintiff's TRO Motion without oral argument.  *See* Civil L.R. 7(b)-1.

## I.        RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff first came to the United States on an F-1 student visa in 2017.  Dkt. 11-2, Ex. A ("Ding Decl."), ¶ 2.  After graduating from Duke University with a B.S. in mathematics in 2021, Plaintiff worked under post-graduate Optional Practical Training (OPT) status until October 2021.  *Id.*, ¶¶ 2-3.  He then changed to H1-B status, before leaving the U.S. in September, 2022, and re-applying for a new F-1 visa to pursue a master's degree in statistics at Stanford University.  *Id.*, ¶ 3.  He completed his studies and obtained that degree in June, 2024, and applied for post-graduate OPT again, which was granted and valid through August 2025.  *Id.*, ¶ 4.  In June 2025, Plaintiff filed a two-year STEM-OPT extension application, and was granted an automatic 180-day

extension past August, 2025. *Id.*, ¶ 5. During this most recent extension, plaintiff was employed as an Applied Machine Learning Engineer at Fireworks AI. *Id.*, ¶ 6. On February 8, 2026, the automatic extension elapsed, and as a result Plaintiff was terminated by Fireworks AI on that same date. *Id.*, ¶¶ 7-8. Plaintiff now declares that he is "in limbo without a decision on [his] STEM OPT extension," and is "terrified that ICE [Immigration and Customs Enforcement] could try to detain [him] at any moment[.]" *Id.*, ¶¶ 9-10. On February 9, 2026, following the expiration of his automatic extension, Plaintiff filed the pending TRO Motion. Dkt. 8.

The TRO Motion was not filed *ex parte*:  Plaintiff's attorney represents that he will complete service of the papers upon the U.S. Attorney for the Northern District of California on February 10, 2026. Dkt. 8-2 at 2;  Dkt. 11-2 at 2. On the same day, Plaintiff filed an Amended Motion for a TRO, "only to further clarify the relief he is seeking." Dkt. 11 at 2.[1] All Parties have consented to magistrate-judge jurisdiction in this action. Dkts. 9-10. Having considered Plaintiff's submission, the relevant law and the record in this action, the Court **TERMINATES as moot** Plaintiff's original motion (Dkt. 8) and **GRANTS IN PART** and **DEFERS IN PART** the TRO Motion (insofar as set forth in Dkt. 11) pending the Parties' stipulated briefing schedule.

## II.    LEGAL STANDARD

The "legal standards applicable to TROs and preliminary injunctions are substantially identical." *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (internal quotation marks and citation omitted). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). Moreover, "a TRO 'should be restricted to … preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)). The four *Winter* factors for a TRO or preliminary injunctions require a plaintiff to

---

[1] The Court refers to Dkts. 8 and 11, collectively, as the "TRO Motion" because they are substantively identical, except that Dkt. 11 clarifies the relief that Plaintiff seeks.

United States District Court
Northern District of California

establish: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. However, "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the "balance of equities" and "public interest" factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III. DISCUSSION

The TRO Motion seeks relief in the form of protective measures as well as relief relating to the merits of Plaintiff's APA and Mandamus Act claims. *See* Dkt. 8 at 21-22. As an initial matter, although the Court has not received Defendants' response and the Parties "intend to stipulate to a briefing deadline," if the Court finds that the requirements for an *ex parte* TRO would be met, it "may rule on [a] motion for a TRO without awaiting a response." *Cf., e.g.*, *Versaterm Inc. v. City of Seattle*, No. 16-cv-1217-JLR, 2016 WL 4160271, at *3 (W.D. Wash. Aug. 4, 2016) (although this provision is explicit in the Local Rules of the Western District of Washington, Federal Rule of Civil Procedure 65(b) supports the same outcome: "The court may issue a temporary restraining order without written or oral notice to the adverse party" if certain conditions are satisfied.).

The relief Plaintiff seeks in the form of protective measures is divided into two parts. First, as set forth in points 2-4 of the TRO Motion, Plaintiff asks the Court to:

> 2. Enjoin Defendants from arresting and incarcerating Plaintiff pending the resolution of these proceedings.
>
> 3. Enjoin Defendants from transferring Plaintiff outside the jurisdiction of this District pending the resolution of these proceedings.
>
> [and]
>
> 4. Enjoin Defendants from removing Plaintiff outside of the United States pending the resolution of these proceedings[.]

3

United States District Court
Northern District of California

Dkt. 11 at 21-22.  Second, Plaintiff asks the Court to "[e]njoin Defendants from other adverse legal effects against Plaintiff stemming from the unreasonable delay in the adjudication of his pending application[.]" *Id.* at 22.  The Court refers to the first three protective measures—seeking to prevent Plaintiff's arrest and incarceration, transfer outside of this district and removal from the United States—as the "*habeas* protective measures" because this relief goes to the Plaintiff's efforts to prevent his detention and deportation in various forms.

The Court addresses the *habeas* protective measures separately from the other protective measures, and the affirmative relief, sought by Plaintiff.

### 1.    Relief Sounding in *Habeas Corpus*

For the *habeas* protective measures, the Court finds that the requirements for issuing a temporary restraining order without notice set out in Federal Rule of Civil Procedure 65(b)(1) are satisfied.  Several recent cases from courts in this District have concluded, in circumstances where a petitioner-plaintiff seeks to prevent their incarceration, transfer or removal pending an immigration *habeas* petition, that a showing of "immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition" was satisfied.  *E.g.*, *Aguilar Garcia v. Bondi*, No. 25-cv-5070-JSC, Dkt. 3 (J. Freeman, as general duty judge);  *Pinchi v. Noem*, No. 25-cv-5632-RMI, Dkt. 6 (J. Lin, acting as general duty judge).  While Plaintiff's TRO Motion is not brought pending a *habeas* petition, the Court concludes that—with regard to the *habeas* protective measures—the considerations are similar in all relevant respects.

Turning to the merits of the TRO Motion with regard to the *habeas* protective measures sought, the Court finds that Plaintiff has shown at least that there are "serious questions going to the merits," the "irreparable harm" and "public interest" factors are satisfied, and "the balance of hardships tips sharply" in his favor.  *Friends of the Wild Swan*, 767 F.3d at 942.

First, Defendants have a mandatory duty to adjudicate immigration benefits applications within a reasonable period of time, and Plaintiff's declarations raise at least serious questions as to whether the Defendants' delay is unreasonable.  In the immigration-specific context, serious questions are raised both pursuant to the guidance of Congress that "the processing of an immigration benefit application should be completed not later than 180 days after the initial filing

4

of the application," (8 U.S.C. § 1571(b)), and in light of the regulations providing for an automatic 180-day extension in STEM OPT cases, (*see* 8. C.F.R. § 274a.12(b)(6)(iv).  Moreover, under the APA, administrative agencies must act upon the matters presented to them within a reasonable period of time.  5 U.S.C. § 555(b).  Plaintiff's declaration avers that he applied for his two-year STEM OPT extension in June, 2025, (Ding Decl., ¶ 6), and thus 7-8 months have elapsed in which Defendants have failed to adjudicate his application.

Plaintiff has also shown that without the *habeas* protective measures in place, imminent irreparable harm is likely to result.  The Ninth Circuit has recognized "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). If Plaintiff were detained, transferred to another jurisdiction or removed during the pendency of these proceedings, there is no question that the harm would be irreparable.  As to the imminent nature of the harm, Plaintiff's work authorization has now expired, and the cases cited by Plaintiff demonstrate that the potential for incarceration, transfer or removal is sufficiently likely to render the harm imminent.  Dkt. 11 at 18 (arguing that:  "Other similarly situated international students have had their F-1 visa revoked, or their F-1 visa status otherwise interrupted, which has led to the arrest and detention of hundreds of international students in the United States" (citing the high-profile cases of Mahmoud Khalil, Rumesysa Ozturk, Badar Khan Suri, and the litigation in *Doe v. Trump, et al.*, 4:25-cv-3502-JSW, wherein "Mr. Ding was himself one of the hundreds of students impacted by the unlawful SEVIS terminations in 2025 that were only remedied through federal court litigation.").

Third (and fourth, because the "public interest" merges with the balance of harms inquiry in Government-Defendant cases), the Court finds that the balance of harms tips sharply in Plaintiff's favor as to the *habeas* protective measures sought.   The potential harms to Plaintiff are the same as those described above, including the economic, psychological and social/familial burdens of immigration detention.  *See Hernandez*, 872 F.3d at 995.  The harms to the

Government, by contrast, are likely to be minimal (if there is any harm at all).[2]  For example, there is no national security or public safety interest in incarcerating, transferring or removing Plaintiff, since Plaintiff has been lawfully in the U.S. in various capacities since 2017 and has been a productive member of society as a student, graduate student and then as a statistician for multiple U.S. firms.  Ding Decl., ¶¶ 2-7.  Indeed, Plaintiff's only misstep was a misdemeanor conviction (reduced to an infraction) for disturbing the peace due to excessive noise.  *See* Dkt. 1, ¶ 36.

Accordingly, because Plaintiff has shown serious questions going to the merits of his APA and Mandamus Act claims, Plaintiff has shown a likelihood of irreparable harm with regard to the potential for his incarceration, transfer or removal and Plaintiff has shown that the balance of harms with regard to his the same tips sharply in his favor, the Court **GRANTS IN PART** the TRO Motion as it relates to the *habeas* protective measures sought.

### 2.      Plaintiff's Other Relief Sought

With regard to points 1 and 5-6 of the relief sought by Plaintiff, (*see* Dkt. 11 at 21-22), the Court does not find that an *ex parte* TRO is warranted.  Specifically, Plaintiff has not shown that "**immediate** and irreparable injury, loss, or damage will result to the movant **before the adverse party can be heard in opposition**" with regard to this relief.  *Contra* Fed. R. Civ. P. 65(b)(1)(A) (emphasis added).  Accordingly, the Court **DEFERS** ruling on the issues as it relates to such relief pending a response from Defendants and a reply from Plaintiff.

### IV.   CONCLUSION

Plaintiff's TRO Motion is **GRANTED IN PART**:

- Defendants are **ENJOINED** from arresting and incarcerating Plaintiff until (and including) February 24, 2026;

- Defendants are **ENJOINED** from transferring Plaintiff outside the jurisdiction of this District until (and including) February 24, 2026; and

---

[2] As to any harms related to the burdens of adjudicating Plaintiff's application, the Court need not consider such harm as it relates to the specific relief sought above – the Court need only consider the harm to the Government from being prevented from incarcerating, transferring or deporting Plaintiff due to his lapsed status.

United States District Court
Northern District of California

United States District Court
Northern District of California

- Defendants are **ENJOINED** from removing Plaintiff outside of the United States until (and including) February 24, 2026.

The time period for such restraining order may be enlarged by the Court until such time as a motion for preliminary injunction on the matter may be heard. The remainder of Plaintiff's TRO Motion is **DEFERRED** pending briefing by the Parties. The Parties **shall** file their stipulated briefing schedule **no later than 4:00 p.m. on February 11, 2026**.

    **SO ORDERED.**

Dated: February 10, 2026

_____
SUSAN VAN KEULEN
United States Magistrate Judge

7